UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAYAN DUENAS RIGER,

                             Plaintiff,

       v.                                                          9:18-CV-1161
                                                                          (GTS/TWD)

OFFICER BIGALOW, et. al.,

                              Defendants.
_____

APPEARANCES:

MAYAN DUENAS RIGER
Plaintiff, pro se
15-R-1240
Attica Correctional Facility
Box 149
Attica, NY 14011

GLENN T. SUDDABY
Chief United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

       The Clerk has sent to the Court for review a pro se civil rights Complaint filed by plaintiff Mayan Duenas Riger[1] ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Dkt. No. 1 ("Compl."). Plaintiff, who is currently confined at Attica Correctional Facility ("Attica C.F."), has not paid

---

      [1]     Plaintiff filed this action using the name Mayan Duenas Riger.  Plaintiff is identified on the New York State Department of Corrections and Community Supervision's ("DOCCS") website as Riger Mayanduena with assigned Department ID Number ("DIN"): 15-R-1240.  *See* http://nysdoccslookup.docs.ny.gov (last visited Oct. 18, 2018).

the statutory filing fee and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. *See* Dkt. No. 3. Accordingly, the Court grants Plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the

---

[2] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 Civ. 4768, 1998

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3

WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**B.    Summary of the Complaint**[4]

The incidents that form the foundation for the Complaint occurred while Plaintiff was confined at Clinton Correctional Facility ("Clinton C.F."). *See generally,* Compl. The following facts are set forth as alleged by Plaintiff in his Complaint.

On January 14, 2018, at 8:45 p.m., Plaintiff was at the medication window of the

---

[4] The Complaint includes exhibits. *See* Dkt. No.1-1. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Clinton C.F. Annex Building. Dkt. No. 1-1 at 4. Plaintiff received and swallowed his medication while still standing at the window. *Id.* Plaintiff opened his mouth to show the nurse that he had swallowed the medication, but the nurse accused Plaintiff of hiding his medication under his tongue. *Id.* Plaintiff, who is not fluent in English, attempted to explain that he had dentures and a bridge under his tongue to keep the appliance secure and, perhaps, the nurse confused the bridge for medication. *Id.* at 5, 8.

Plaintiff was directed to wait on a bench near the window. Dkt. No. 1-1 at 5. Shortly thereafter, defendants Officer Bigalow ("Bigalow"), Correction Officers John Doe #1 and #2 ("C.O. Does #1 and #2"), and Sergeant John Doe #3 ("Sgt. Doe") arrived and sprayed pepper spray (or mace) in Plaintiff's eyes and face. Dkt. No. 1-1 at 5. Bigalow told Plaintiff, "I'm going to beat you for not listening to me." *Id.* at 6. Defendants repeatedly punched and kicked Plaintiff in his face and body. *Id.* at 6, 8. As a result of the assault, Plaintiff suffered a fractured jaw, two black eyes, swollen eye sockets, and lost a tooth. *Id.* at 5, 6, 7. The assault was captured by a video camera in front of the medication window. Dkt. No. 1-1 at 6.

Plaintiff was escorted to the shower to wash the mace off of his body. Dkt. No. 1-1 at 6. Photographs were taken of Plaintiff's injuries and his conversation with a doctor was recorded. *Id.* The doctor directed officers to transport Plaintiff to Albany Hospital for treatment. *Id.* at 5, 7.

When Plaintiff returned to Clinton C.F., he was admitted to the infirmary, where he remained for five days. Dkt. No. 1-1 at 7. Plaintiff was subsequently transferred to the Special Housing Unit ("SHU") after being falsely accused of assaulting an officer. *Id.* at 8. While Plaintiff was in the SHU, Bigalow came to his cell to question him about the use of force incident. *Id.* Bigalow also asked Plaintiff if needed assistance or evidence for his

disciplinary hearing. *Id.* at 9. Plaintiff immediately recognized Bigalow as one of the officers that assaulted him and refused to speak with him. Compl. at 9.

At the disciplinary hearing, Plaintiff asked for an interpreter and requested that the hearing officer[5] review the video surveillance from the day of the incident. Dkt. No. 1-1 at 9. The hearing officer denied both requests. *Id.* At the conclusion of the hearing, Plaintiff was sentenced to 120 days in the SHU with a thirty day loss of recreation, telephone, and commissary. *Id.*

Construed liberally,[6] Plaintiff asserts Eighth Amendment excessive force claims and Fourteenth Amendment due process claims against Bigalow, C.O. Doe #1, C.O. Doe #2, and Sgt. Doe. Compl. at 5; Dkt. No. 1-1 at 10. Plaintiff seeks monetary damages and declaratory relief. *Id.* For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

**C.    Nature of Action**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y.

---

[5]    The hearing officer is not identified or named as a defendant herein.

[6]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency.  *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**IV.   ANALYSIS**

    **A.   Eighth Amendment - Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components:  (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated."  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)

("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

Plaintiff claims that Bigalow, C.O. Doe #1, C.O. Doe #2, and Sgt. Doe maliciously assaulted him on January 14, 2018. Plaintiff has identified the time, location, amount of force used, and the injuries allegedly sustained as a result of the incidents. Construing the Complaint liberally and with due regard for Plaintiff's status as a pro se litigant, the Court will require a response to Plaintiff's Eighth Amendment excessive force claims against Bigalow, C.O. Doe #1, C.O. Doe #2, and Sgt. Doe. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### B. Fourteenth Amendment Procedural Due Process

Plaintiff claims that his due process rights were violated during his disciplinary hearing. To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir.2004); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996).

"Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (while not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*).

9

Specifically, while under certain circumstances confinement in the SHU of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

It is the length of the actual punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287–88 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin [v. Conner*] to require that we look to actual punishment in making this determination").

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id*. (citing, *inter alia, Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

In order to state a viable cause of action for a violation of due process, Plaintiff must first plead facts to establish that he had a liberty interest in being free from confinement in the SHU.

While Plaintiff was sentenced to 120 days in the SHU, Plaintiff has not plead facts related to how long Plaintiff was actually confined to the SHU. Construing the Complaint liberally and assuming that Plaintiff served the entire 120-day sentence, because this period of disciplinary confinement falls between 101 and 305 days, in order to determine whether Plaintiff suffered an atypical hardship, and therefore has been deprived a liberty interest, the court must look to "the conditions of the imposed confinement relative to the ordinary prison conditions[.]" *Reynoso v. Selsky*, 292 F. App'x 120, 123 (2d Cir. 2008). As presently plead, the Complaint is void of any facts establishing how the conditions of Plaintiff's SHU confinement differed in any way from normal SHU conditions or facts suggesting that his confinement in SHU imposed an atypical and significant hardship. Therefore Plaintiff has failed to plead the existence of a valid liberty interest. *See Palmer*, 364 F.3d at 65.

Even assuming that Plaintiff's SHU confinement implicated a liberty interest, the Fourteenth Amendment claims are subject to dismissal because Plaintiff has failed to plead that any named defendant was personally involved in the deprivation of any liberty interest. It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). Plaintiff has not plead that C.O. Doe #1, C.O. Doe #2, or Sgt. Doe were personally involved in Plaintiff's disciplinary hearing, the decision to confine him to the SHU, or his conditions of confinement in the SHU. Moreover, the hearing officer is not identified or named as a defendant.

11

With regard to Bigalow, to the extent that Plaintiff claims that his due process rights were violated because the disciplinary hearing was precipitated by Bigalow's false misbehavior report, that claim is subject to dismissal. "The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted). "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." *Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007).[7]

Accordingly, Plaintiff's due process claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## V. DOE DEFENDANTS

Plaintiff is advised that the United States Marshals Service cannot effect service on an unidentified defendant. If Plaintiff wishes to pursue claims against C.O. Doe #1, C.O. Doe #2, and Sgt. Doe, he must take reasonable steps to ascertain the identity of the defendants. Upon learning the identity of the unnamed defendants, Plaintiff must amend his complaint to properly name him or her as a defendant. If Plaintiff fails to ascertain the identity of the defendants so as to permit the timely service of process, all claims against that individual will

---

[7] To the extent that Plaintiff attempts to assert a due process claim against Bigalow for failure to provide adequate assistance prior to the hearing, that claim is belied by the facts in the Complaint. To wit, Plaintiff refused to talk to Bigalow when he came to his cell in the SHU. Compl. at 9.

be dismissed.[8]

## VI. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel.").[9] Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, No. 93-CV-1449 (TJM)

---

[8] Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

[9] Actual appointment of counsel is contingent upon the availability of pro bono counsel to accept an appointment. "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

13

899 F.Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."[10] *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

In this case at this preliminary stage, the Court is unable to determine whether Plaintiff meets the threshold requirement that at least some aspects of his claim are "likely to be of substance." *Hodge*, 802 F.2d at 61. Plaintiff has not submitted any evidence supporting his claims. Even if the Court were to assume, for purposes of this motion, that Plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; and (3) if this case survives any dispositive motions filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference.

The Court is not aware of any special reason why appointment of counsel in this case is warranted at this time and is mindful, as the Second Circuit has admonished that it must be, of the scarcity of volunteer lawyers and the need to allocate that resource with the utmost care. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (noting that "[v]olunteer lawyer time is a precious commodity."). As discussed *supra*, Plaintiff provided a Complaint with facts sufficient to survive this Court's sua sponte review. Thus, Plaintiff's motion for the appointment of counsel is denied without prejudice. After defendants have

---

[10] The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296, 298 (1989). Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case. *See Mallard*, 490 U.S. at 298, 309.

14

responded to the allegations in the Complaint, and the parties have undertaken discovery, Plaintiff may seek appointment of counsel and the Court may be better able to determine whether such appointment is warranted.

## VII.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**;[11] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Fourteenth Amendment due process claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[12] and it is further

---

[11]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[12]   Should Plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the Eighth Amendment excessive force claims against Bigalow, C.O. Doe #1, C.O. Doe #2, and Sgt. Doe survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response; and it is further

**ORDERED** the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the defendants.  The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the Complaint be filed by the defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of Doe defendants.  **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

16

**ORDERED** that Plaintiff's motion for counsel (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

Dated:     October 26, 2018
            Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge