UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RIGER MAYANDUENAS[1],

                             Plaintiff,

    v.                                                                          9:18-CV-1161
                                                                                           (GTS/TWD)

N.A. HARRIMAN, et al.,

                             Defendants.

_____

APPEARANCES:

RIGER MAYANDUENAS
Plaintiff, Pro se
15-R-1240
**(last known address)**
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. LETITIA JAMES                                   KONSTANDINOS D. LERIS, ESQ.
New York State Attorney General - Albany
The Capitol
Albany, NY 12224
Attorney for Defendant

THÉRÈSE WILEY DANCKS
United States Magistrate Judge

## REPORT AND RECOMMENDATION

## I.        INTRODUCTION

_____

[1]         In the original Complaint, Plaintiff was identified as Mayan Duenas Riger.  *See generally*, Compl. In the Amended Complaint, Plaintiff is identified as Riger Mayanduenas.  *See generally*, Am. Compl.  Plaintiff is identified on the on the New York State Department of Corrections and Community Supervision's ("DOCCS") website as Riger Mayanduena with assigned Department ID Number ("DIN"): 15-R-1240.  *See* http://nysdoccslookup.doccs.ny.gov (last visited Sept. 9, 2019).

Pro se plaintiff Riger Mayanduenas ("Plaintiff"), a former New York State prison inmate, whose address is not currently known to the court, commenced this civil rights action asserting claims arising out of his confinement at Clinton Correctional Facility ("Clinton C.F."). On May 21, 2019, Plaintiff filed a "Statement of Release" advising the Court that he was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), but failed to provide notification of his current address to both the Court and Defendants' counsel.  Dkt. No. 38.  Because Plaintiff has failed to comply with the Court's requirement that he notify the court of his further change of address, I recommend that this action be dismissed.

## II.   BACKGROUND

On September 26, 2018, Plaintiff commenced this action by filing a Complaint with an application to proceed in forma pauperis.  Dkt. No. 1 ("Compl.") and Dkt. No. 2 ("IFP Application").  At the time he filed the Complaint, Plaintiff was confined at Attica Correctional Facility ("Attica C.F.").  Compl. at 2.  In a Decision and Order filed on October 26, 2018 (the "October Order"), the Court granted Plaintiff's IFP Application and reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.  *See* Dkt. No. 5.  On the basis of that review, the Court found that the Eighth Amendment claims against defendants Officer Bigelow ("Bigelow"), C.O. Doe #1, C.O. Doe #2, and Sergeant Doe survived review and required a response.  *Id*. at 8.  The Court advised Plaintiff that the U.S. Marshal Service could not effect service upon an unidentified defendant and directed Plaintiff to take reasonable steps to identify the Doe defendants.  *Id.* at 12.  A summons was issued for Bigelow and, on November 26, 2018, Bigelow filed an acknowledgment of service.  Dkt.

Nos. 6 and 7.

On December 3, 2018, Plaintiff filed an Amended Complaint identifying the Doe defendants.  Dkt. No. 9 ("Am. Compl.").  In a Decision and Order filed on January 22, 2019 (the "January Order"), the Court accepted the amended pleading and directed a response to the Eighth Amendment excessive force claims against Bigelow, C.O. Fuller, C.O. Jason Burdo, and C.O. Maurer and Eighth Amendment failure-to-protect claims against Nurse Administrator Harriman and Sergeant Dixon.  *See* Dkt. No. 12.  On January 29, 2019, summonses were issued to Fuller, Burdo, Maurer, Harriman, and Dixon.  Dkt. No. 13.

On February 5, 2019, Defendants filed a motion for summary judgment, in lieu of answering Plaintiff's Amended Complaint, seeking dismissal on the ground that Plaintiff failed to exhaust his administrative remedies.  Dkt. No. 14.  On March 15, 2019, Plaintiff opposed the motion.  Dkt. No. 27.

On May 17, 2019, Plaintiff filed a letter advising of his pending release from DOCCS' custody on May 21, 2019.  Dkt. No. 34.  On May 21, 2019, the Court issued an Order and Report-Recommendation recommending that Defendants' motion for summary judgment be denied.  Dkt. No. 36.  On the same day, the Court served the Order and Report-Recommendation on Plaintiff, via regular mail, at Attica C.F.  *Id*.

On May 23, 2019, the Court received Plaintiff's "Statement of Release," postmarked from Attica C.F. on May 21, 2019.  Dkt. No. 37.

On June 10, 2019, the Order and Report-Recommendation mailed to Plaintiff on May 21, 2019 was returned to the Court as undeliverable.  Dkt. No. 40.  The envelope was marked "Return to Sender - Released".  *Id*.

In a Decision and Order dated August 22, 2019 (the "August Order"), the Court

3

accepted and adopted the Order and Report-Recommendation, in its entirety.  Dkt. No. 41.

On August 22, 2019, the Court attempted to mail a copy of the Decision and Order to Plaintiff

at Attica C.F.  Dkt. No. 41.  On September 3, 2019, that mailing was returned to the Court as

"Return to Sender - Released."  Dkt. No. 45.

## III.   DISCUSSION

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its

discretion, order dismissal of an action based on a plaintiff's failure to prosecute or comply

with an order of the court.  Fed. R. Civ. P. 41(b); *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d

Cir. 2014).  This power to dismiss may be exercised when necessary to "achieve the orderly

and expeditious disposition of cases."  *See Freeman v. Lundrigan*, No. 95-CV-1190, 1996

WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996) (Pooler, J.).  Even though Rule 41(b) speaks

only of a dismissal on a motion by defendant, courts have recognized that the rule does not

abrogate a district court's inherent power to dismiss a complaint, sua sponte, for failure to

prosecute.  *See Saylor v. Bastedo*, 623 F.2d 230, 238-39 (2d Cir. 1980).

It is also well-settled that the term "these rules" in Fed. C. Civ. P. 41(b) refers not only

to the Federal Rules of Civil Procedure, but also to the local rules of practice for a district

court.  *See Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006).  N.D.N.Y. L.R. 41.2(b)

provides that failure to notify the court of a change of address in accordance with Local Rule

10.1(c)(2) "may result in dismissal of any pending action."  *See, e.g., Benitez v. Taylor*,

9:130-CV-1404 (TJM/CFH), 2014 WL 7151607, at * 2 (N.D.N.Y. Dec. 15, 2014) (failure to

notify the court of current address grounds for dismissal); *Dansby v. Albany Cnty. Corr.*

*Facility*, No. 6:95-CV-1525 (RSP/RWS). 1996 WL 172699, at * 1 (N.D.N.Y. April 10, 1996)

("It is neither feasible nor legally required that the clerks of the district court undertake independently to maintain current addresses on all parties to pending actions.  It is incumbent upon litigants to inform the clerk of address changes. . . . In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changed normally would be reflected by those inquiries if made in writing.") (quoting *Perkins v. King*, No. 84-3310, 759 F.2d 19, at * 4 (5th Cir. March 19, 1985)).

The Court considers the correctness of a Rule 41(b) dismissal in light of five factors: (1) the duration of the plaintiff's failure to comply with court orders; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in a fair chance to be heard; and (5) whether the imposition of sanctions less drastic than dismissal is appropriate.  *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).

As to the first factor, the Court notes that Local Rule 41.2(a) of the Northern District states that "the plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution."  N.D.N.Y.L.R. 41.2(a).  Here, Plaintiff has not communicated with the Court since he notified the Clerk's Office of his release from prison in May 2019.  Thus, the first factor weighs in favor of dismissal.

The Second Circuit requires that the plaintiff receive "adequate notice that the case could be dismissed due to inaction."  *Folk v. Rademacher*, No. 00-CV-199S, 2005 WL 2205816, *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens v. Thomann*, 273 F.3d 159, 180-81 (2d Cir. 2001)).  Plaintiff was informed of his obligation to notify the Court of his address change

5

when he was provided with the October 2018 Order.  *See* Dkt. No. 5 at 16 ("Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any changes in his address; their failure to do so will result in the dismissal of his action." (emphasis in original).  Plaintiff was reminded of his obligation in the January 2019 Order. Dkt. No. 12 at 8.  Plaintiff has been released from DOCCS' custody and failed to notify the Court or Defendants' counsel of his change in address.  Thus, this factor weighs in favor of dismissal.

The third factor is also satisfied as further delay is likely to prejudice Defendant. The events giving rise to Plaintiff's claims occurred in January 2018, and the parties have not yet engaged in any discovery.  Further delay may well affect Defendants' ability to locate witnesses (who might retire from, or be released or transferred from Clinton Correctional Facility), and to preserve evidence.  *See, e.g., Georgiadis v. First Boston Corp*., 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (noting that passage of time would cause memories to fade). Here, the Court also finds that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case.  Plaintiff has had ample opportunity to be heard and yet has failed to take any action since May 2019.  It is the need to monitor and manage cases such as this that delay the resolution of other cases and contribute to the Second Circuit's relatively long median time to disposition for such civil rights cases.

Finally, the Court has carefully considered sanctions less drastic than dismissal and finds them to be inadequate under the circumstances.

## IV.    CONCLUSION AND RECOMMENDATION

Plaintiff has failed to take any meaningful steps to pursue his claims in this action

6

since notifying the Court of his release in May 2019.  Accordingly, based upon Plaintiff's

failure to comply with directives from this Court, and after considering the factors relevant to

a dismissal under Rule 41(b) of the Federal Rules of Civil Procedure, it is hereby respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint in this action (Dkt. No. 9) be

**DISMISSED** in its entirety, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure,

based upon Plaintiff's failure to prosecute and to comply with this Court's orders and local

rules of practice.

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and

Report–Recommendation, along with copies of the unpublished decisions cited herein in

accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.2009) (per curiam).

**ORDERED** that the Clerk serve a copy of this Report-Recommendation on the parties

in accordance with the Court's local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE**

**REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     September 9, 2019
           Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[2]     If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(c).

Freeman v. Lundrigan, Not Reported in F.Supp. (1996)

1996 WL 481534

Case 9:18-cv-01161-GTS-TWD   Document 46   Filed 09/09/19   Page 8 of 25

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. See Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." See Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. See Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. Link v. Wabash Railroad County Independent School District, 370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. See

Rodriguez v. Walsh, No. 92–Civ–3398, 1994 WL 9688, *1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." See Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

Dansby v. Albany Cty Corr. Facility, No. 95–CV–1525, 1996 WL 172699, *1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting Perkins v. King, No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); see generally Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, See Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

**\*2**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 7151607
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Robert BENITEZ, Plaintiff,
v.
TAYLOR, et al., Defendants.

No. 9:13–CV–1404 (TJM/TWD).
|
Signed Dec. 13, 2014.
|
Filed Dec. 15, 2014.

**Attorneys and Law Firms**

Robert Benitez, Comstock, NY, pro se.

Hon. Eric T. Schneiderman, C. Harris Dague, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.


**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

 *1  This *pro se* action brought pursuant to 42 U.S.C. § 1983, was referred to the Hon. Christian F. Hummel, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). No objections to Magistrate Judge Hummel's Order and Report–Recommendation [dkt. # 17] have been filed, and the time to do so has expired. [1]


**II. DISCUSSION**

After examining the record, this Court has determined that the Order and Report–Recommendation is not subject to attack for plain error or manifest injustice.


**III. CONCLUSION**

Accordingly, the Court **ADOPTS** the Order and Report–Recommendation [dkt. # 17] for the reasons stated therein. Defendants' motion to dismiss [dkt. # 14] is **GRANTED** and the complaint is **DISMISSED for failure to prosecute.** The Clerk may close the file in this matter.

IT IS SO ORDERED.

ROBERT BENITEZ,

Plaintiff,

v.

TAYLOR, Correctional Officer; Great Meadow Correctional Facility, PREVOST, Correctional Officer; Great Meadow Correctional Facility.

Defendants.


**REPORT–RECOMMENDATION AND ORDER** [1]

CHRISTIAN F HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Robert Benitez ("Benitez"), a former inmate in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS employees, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1); Dkt. No. 4. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 41(b). Dkt. No. 14. Benitez does not oppose the motion. For the reasons that follow, it is recommended that defendants' motion be granted.


**I. Background**

On November 12, 2013, Benitez commenced this action by filing a complaint alleging that defendants violated his Eighth Amendment rights by using excessive force against him. Compl. (Dkt. No. 1); Dkt. No. 4. Benitez was incarcerated at the Great Meadows Correctional Facility ("Great Meadows") at the time the complaint was filed. Compl. at 2. Along with his complaint, Benitez submitted a Motion for Leave to Proceed In *Forma Pauperis* ("IFP"). Dkt. No. 2. This was the Court's last contact with Benitez.

On February 20, 2014, the IFP order was mailed to Benitez's address but was returned as "undeliverable" and the envelope read "released." Dkt. No. 6. The IFP order contains a notice to Benitez requiring him to notify the Court and defendants' counsel of any change of address. Dkt. No. 4 at 15. The notice specifically advises that the failure to notify the Court of his address could result in the dismissal of his complaint. *Id.*

2014 WL 7151607

On February 27, 2014, defendants mailed their answer to the complaint to Benitez's last known address, but the answer was returned with the envelope marked "Refused, Unable to Forward" and "Return to Sender." Dague Decl. (Dkt. No. 14–2) ¶¶ 6–7; Dkt. No. 14–3 at 8. On two separate occasions, defendants attempted to serve their mandatory disclosure documents on Benitez but the packages were returned and marked "undeliverable." Dague Decl. ¶¶ 10–11, Dkt. Nos. 13, 14–3 at 10–11. The Court also attempted to mail the Pre–Trial Discovery and Scheduling Order to Benitez but that order was returned as "undeliverable" with the envelope reading "released." Dkt. No. 12. The DOCCS "Inmate Locator" indicates that Benitez was released from Great Meadows on January 11, 2014. Dkt. No. 14–3 at 13.

## II. Discussion

**\*2** Defendants seek dismissal of Benitez's complaint for his failure to contact the Court and notify the Court and defendants of his current address.

Federal Rule of Civil Procedure 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedure] or a court order...." Fed.R.Civ.P. 41(b); *see Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1962); *MTV Networks v. Lane,* 998 F.Supp. 390, 393 (S.D.N.Y.1998); *see also* N.D.N.Y.L.R. 41.2(b).

Since a Rule 41(b) dismissal is a "harsh remedy ... [it] is appropriate in extreme situations." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) (citations omitted). Furthermore, courts should be "especially hesitant" to dismiss an action of a pro se plaintiff for "procedural deficiencies." *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998) (internal citations omitted); *see also Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). To determine whether dismissal for failure to prosecute is appropriate, courts should consider whether:

> (1) plaintiff's failure to prosecute caused a delay of significant duration; (2) the plaintiff was given notice that further delay would result in dismissal; (3) the defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an

> opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Lucas,* 84 F.3d at 535; *see also Lewis v. Rawson,* 564 F.3d 569, 576 (2d Cir.2009) (citations omitted).

According to the Local Rules of Practice for this district ("Local Rules"), "[a]ll attorneys of record and *pro se* litigants must immediately notify the court of any changes of address." N.D.N.Y.L.R. 10.1(c)(2) (emphasis omitted). Failure to do so will subject the action to dismissal under Rule 41(b) of the Federal Rules of Civil Procedure and Local Rule 41.2(b) for lack of prosecution. *See e.g., Fenza v. Conklin,* 177 F.R.D. 126, 127 (N . D.N.Y.1998) (dismissing inmate's action for failure to notify the Court of current address); *see also Rosa v. Keiser,* No. 10–CV–1313 (DNH/DRH), 2012 WL 2178961, at *1 (N.D.N.Y. May 14, 2012) (dismissing former inmate's action for failure to notify the Court of current address).[2]

In this case, dismissal is justifiable. Defendants contend that Benitez's lack of correspondence with the Court and failure to notify the Court of his current address are grounds for dismissal of his complaint. First, Benitez has failed to prosecute this action for almost nine months. The last correspondence between the Court and Benitez was the filing of the complaint and IFP application on November 12, 2013. Dkt. Nos. 1, 2. A delay of this length makes it significantly difficult to proceed with this action. *Fenza,* 177 F.R.D. at 127; *Rosa,* 2012 WL 2178961, at *1. Second, defendants will be prejudiced by further delay because the defendants have been attempting to send their answer and disclosures to Benitez with no avail. Additionally, defendants will be prejudiced because further passage of time will result in difficulty locating witnesses and preserving evidence. *Barber v. United States,* No. 11–CV–1100 (GTS/DEP), 2012 WL 1681978, at *1 (N.D.N.Y. May 14, 2012) (citing *Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade.... The additional delay that plaintiff has caused here can only make matters worse.")). Third, the need to alleviate the Court's docket outweighs Benitez's right to an opportunity to his day in court because there has been an extensive passage of time without any progress in the litigation due to Benitez's failure to contact the Court. *Barber,* 2012 WL 1681978, at *1 ("It is the need to monitor and manage dilatory cases like this one that delay the resolution of other cases, and contribute to

the Second Circuit's relatively long median time to disposition for pro se civil rights cases.").

**\*3** Lastly, even though Benitez's failure to respond may be attributed to his failure to apprise the Court of his current address, because all parties have an ongoing obligation to keep their addresses updated with both the Court and adversaries, N.D.N.Y .L.R. 10.1(c)(2), such an explanation is irrelevant. N.D.N.Y.L.R. 10 .1(c)(2), 41.2(b); *Fenza, 177 F.R.D. at 126*; *Rosa, 2012 WL 2178961*, at*1. Since there is no way to contact or locate Benitez, the imposition of a lesser sanctions would be futile in this case. Therefore, pursuant to Rule 41(b), dismissal of this action warranted.

Accordingly, defendants' motion should be granted.

**III. Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 14) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)*; *Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989)*; 28 U.S.C § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Filed Aug. 7, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 7151607

**Footnotes**

1    On February 20, 2014, the In Forma Pauperis Order, served on Plaintiff at his last known address at the Great Meadows Correctional Facility, was returned as "undeliverable" and the envelope read "released." The defendants also attempted to serve their answer to the complaint and mandatory disclosure documents, all of which were returned as "undeliverable." Additionally, the Court tried to mail the Pre–Trial Discovery and Scheduling Order, which was also returned as "undeliverable." The Court determined from the DOCCS "Inmate Locator" that Benitez was released from the correctional facility on January 11, 2014.

     The plaintiff failed to keep the Court advised of his address or to file any objections to the Report and Recommendation. Every litigant is required to keep the Court advised of his or her address so that documents and decisions may be served upon them by mail. *See* Local Rules of the United States District Court for the Northern District of New York, 10.1(b), 41. (2) & (b). Failure to do so can greatly delay proceedings and, therefore, can be construed as an abandonment of the action.

     Under the circumstances, the Court deems that Plaintiff intentionally failed to file any objections and has abandoned this action.

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2205816
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wattie FOLK, Plaintiff,

v.

P. RADEMACHER, et al., Defendants.

No. 00-CV-199S.
|
Sept. 9, **2005**.

**Attorneys and Law Firms**

Wattie Folk, Great Meadow Corr. Facility, Comstock, NY, pro
se.

William Lonergan, New York State Attorney General's
Office, Stephen F. Gawlik, Assistant Attorney General,
Buffalo, NY, for Defendants.

DECISION AND ORDER

SKRETNY, J.

I. INTRODUCTION

**\*1** Plaintiff commenced this action under 42 U.S.C. § 1983
on March 3, 2000, by filing a Complaint in the United States
District Court for the Western District of New York. Presently
before this Court is a Motion to Dismiss filed by the remaining
defendants in this case-P. Rademacher, Sgt. Stachewiez, Lt.
Hendel, W.Kelley, Hartman, Fleming, Booker, Piasa and
Sgt. Baker ("Defendants")-on September 2, 2004. Defendants
bring their motion pursuant to Rules 41(b) and 37(b) of the
Federal Rules of Civil Procedure. This is the third motion filed
by Defendants on these grounds. For the reasons stated below,
Defendants' motion is granted and this case is dismissed with
prejudice.

II. BACKGROUND

This motion arises from a discovery ruling issued by the
Honorable Hugh B. Scott, United States Magistrate Judge.
On October 15, 2002, Defendants filed a Motion to Compel
Plaintiff to respond to their First Set of Interrogatories because
Plaintiff's initial response had been inadequate. On May 27,
2003, Judge Scott granted Defendants' Motion to Compel and
directed Plaintiff to file appropriate interrogatory responses
within twenty days. Despite being granted an extension
of time in which to respond, Plaintiff failed to file his
interrogatory response. As a result, on August 19, 2003,
Defendants filed a Motion to Dismiss pursuant to Rules 41(b)
and 37(b) of the Federal Rules of Civil Procedure.

On November 5, 2003, this Court denied Defendants' Motion
to Dismiss after Plaintiff satisfactorily explained the reason
he failed to comply with Judge Scott's Order. This Court
granted Plaintiff an additional thirty days within which to
file his response to Defendants' First Set of Interrogatories.
Plaintiff filed and served his response to Defendants' First
Set of Interrogatories on November 21, 2003. This response,
however, was simply a photocopy of the response Plaintiff
initially filed on August 29, 2002, the one Judge Scott found
to be inadequate.

Consequently, Defendants filed a second Motion to Dismiss
on December 19, 2003. Plaintiff filed a response in
opposition. Therein, Plaintiff did not deny that he simply
re-filed his initial interrogatory response. Rather, he argued
that Judge Scott did not have dispositive jurisdiction, and
therefore lacked the proper authority to find his initial
interrogatory response inadequate. Further, Plaintiff argued
that he did not fail to respond as Defendants alleged because
he did indeed file a response.

On May 24, 2004, this Court denied Defendants' Second
Motion to Dismiss. In doing so, however, this Court
rejected Plaintiff's arguments and excuses for not complying
with Judge Scott's Order. Nonetheless, because Plaintiff is
proceeding *pro se,* this Court determined that granting the
relief Defendants requested would be too drastic a measure at
that stage of the litigation. *See Bobal v. Rensselaer Polytecnic
Inst.,* 916 F.2d 759, 764 (2d Cir.1990) ( "dismissal with
prejudice [under Rule 37] is a harsh remedy to be used only
in extreme situations ..."). This Court warned Plaintiff that
his lawsuit may be dismissed with prejudice if he did not file
and serve appropriate responses to Defendants' First Set of
Interrogatories within thirty days. *Cf. id.* at 764 (discussing
that a court may dismiss an action brought by a *pro se* plaintiff
if such plaintiff has been advised by the court that further non-
compliance with a court order could result in dismissal of the
case with prejudice).

**\*2**  On June 17, 2004, Plaintiff filed a Motion to Extend the thirty-day response deadline. By Order filed July 7, 2004, this Court directed Defendants to provide Plaintiff with another copy of their First Set of Interrogatories, extended Plaintiff's deadline to respond to August 30, 2004, and warned Plaintiff that this was his final extension of time and that his failure to respond could result in his case being dismissed with prejudice. On August 13, 2004, Plaintiff filed his response to Defendants' First Set of Interrogatories.

On September 2, 2004, Defendants filed their instant Third Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. By Order filed October 7, 2004, this Court directed Plaintiff to file a response to Defendants' motion on or before October 29, 2004. On October 29, 2004, Plaintiff filed a Motion for Extension of Time to respond. By Order filed November 4, 2004, this Court extended Plaintiff's response deadline to November 29, 2004, and warned Plaintiff that his failure to file a response could lead to Defendants' motion being granted as uncontested. To date, Plaintiff has not filed a response to Defendants' motion.

### III. DISCUSSION

A. Dismissal under Rule 41(b) For Failure to Prosecute

This case first warrants dismissal based on Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that:

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b).

Rule 41(b) does not define what constitutes failure to prosecute. However, the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982). Dismissal pursuant to Rule 41(b) falls within the court's discretion. *See id.* at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." *Harding v. Fed. Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *see also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should only be granted "when the circumstances are sufficiently extreme." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.**1996**) (citing *Nita v. Connecticut Dep't of Envtl. Prot.,* 16 F.3d 482, 487 (2d Cir.1994)).

**\*3**  The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255 (2d Cir.2004); *Nita,* 16 F.3d at 485; *Feurtado v. City of New York,* 225 F.R.D. 474, 477 (S.D.N.Y.2004) (quoting *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994)). In the present case, these factors weigh in favor of dismissal.

#### 1. Duration of Failures

The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. *See Norden Sys.,* 375 F.3d at 255.

In this case, Plaintiff has failed in two ways. First, as noted above, Plaintiff has failed to respond to Defendants' Third Motion to Dismiss, despite twice being directed by this Court

to do so. Second, and more significant, Plaintiff has failed to adequately comply with Judge Scott's discovery Order of May 27, 2003. Plaintiff has been afforded numerous opportunities to file an appropriate response to Defendants' First Set of Interrogatories. This Court alone has twice extended Plaintiff the benefit of the doubt by denying two Motions to Dismiss for Plaintiff's failure to engage in discovery. While Plaintiff did, in fact, file a response to Defendants' First Set of Interrogatories on August 13, 2004, his response is wholly inadequate. Plaintiff's response contains multiple objections to Defendants' basic interrogatory requests and does not provide anything by way of meaningful discovery. In fact, no useful information whatsoever is contained in Plaintiff's response. Clearly, Plaintiff alone is responsible for repeatedly filing inadequate responses to Defendants' discovery request. As a result, Defendants still have not received any meaningful response to their interrogatory requests.

With respect to the second inquiry, which concerns the duration of Plaintiff's failures, it has been almost one year that Plaintiff has failed to file a response to Defendants' Third Motion to Dismiss. The delay caused by Plaintiff's failure to response to Defendants' interrogatory request is even more significant. Defendants filed and served their First Set of Interrogatories on August 17, 2001. It has thus been more than *four years* and Plaintiff still has not filed an adequate response. This is a failure of significant duration. *Cf. Chira, 634 F.2d at 666-67* (delay of six months sufficient to warrant dismissal for failure to prosecute; *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.,* No. 99 Civ. 9311, 2000 **WL** 1677984, at *2 (S.D.N.Y. Nov.8, 2000) (delay of four months warranted dismissal). Thus, this Court finds that this factor weighs in favor of dismissal. In this Court's view, all delay in this case is attributable to Plaintiff and it is of significant duration.

## 2. Notice of Dismissal

**\*4** The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction. *See Martens v. Thomann,* 273 F.3d 159, 180-81 (2d Cir.2001). In the present case, Plaintiff had adequate notice. First, both the initial Scheduling Order on Defendants' Third Motion to Dismiss and the Order granting Plaintiff's request for an extension of time warned Plaintiff that his failure to file a response as directed could lead to Defendants' motion being granted as uncontested. Second, this Court's Decision and Order denying Defendants' First Motion to Dismiss explicitly stated that Defendants were free to seek dismissal of Plaintiff's Complaint if he failed to respond to the

First Set of Interrogatories as directed. Moreover, this Court's Decision and Order denying Defendants' Second Motion to Dismiss warned Plaintiff that his failure to file appropriate responses to Defendants' First Set of Interrogatories could result in this action being dismissed with prejudice. Because Plaintiff was repeatedly put on notice that his case could be dismissed due to his continued inaction, this factor strongly weighs in favor of dismissal. *See Lyell Theatre,* 682 F.2d at 42-43 (Rule 41(b) dismissal upheld where plaintiff was warned by opposing counsel and the court that dismissal for failure to prosecute was possible).

## 3. Prejudice to Defendants

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted). In *Lyell Theatre,* the court presumed prejudice where the plaintiff on numerous occasions failed to file documents as directed by the court. *Id.* at 39-40, 43. Similar to the present case, the plaintiff in *Lyell Theatre* continued to ignore the court's orders even after he had been warned that he was risking dismissal. *Id.* at 39. Under *Lyell Theatre,* the prejudice to Defendants in this case may be presumed. Thus, this factor weighs in favor of dismissal.

## 4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.,* 375 F.3d at 257. In this regard, " ' a court must not let its zeal for a tidy calendar overcome its duty to justice." ' *Feurtado,* 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir.1968)). Plaintiff's failure to comply with Judge Scott's discovery order has resulted in this Court having to prepare and file numerous scheduling orders, as well as decide three separate motions to dismiss. While this has been a needless expenditure of judicial resources, this Court cannot conclude that the overall effect on docket congestion has been significant.

**\*5** This Court notes, however, that Plaintiff has been afforded Due Process rights in that he has been provided numerous opportunities to comply with the Orders of this Court. Thus, Plaintiff's own failure to litigate this matter is

not a denial of Due Process. *See Dodson v. Runyon,* 957 F.Supp. 465, 470 (S.D.N.Y.1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *cf. Feurtado,* 225 F.R.D. at 480 (repeated failure to comply with court orders diminishes a plaintiff's right to present his claims). Accordingly, this factor also weighs in favor of dismissal.

5. Consideration of Lesser Sanctions

Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. *See Norden Sys.,* 375 F.3d at 257. Upon reviewing the entire record in this case, it is the opinion of this Court that Plaintiff has no intention of complying with this Court's Orders or properly litigating this case. Plaintiff has repeatedly ignored court orders by failing to file a response to Defendants' Third Motion to Dismiss and to Defendants' First Set of Interrogatories. Given the procedural history of this case, this Court finds that any sanction short of dismissal would be ineffective. *See Smith v. Human Res. Admin. of New York City,* 2000 **WL** 307367, at *3 (S.D.N.Y. Mar.24, 2000) (finding lesser sanctions inappropriate where past court orders did not motivate the plaintiff to move the case forward); *Alevizopoulos,* 2000 **WL** 1677984, at 4 (finding lesser sanctions inappropriate based on repeated failures to comply with court orders). Thus, this final factor also weighs in favor of dismissal.

Accordingly, this Court finds that dismissal of this case is warranted under Rule 41(b) for Plaintiff's failure to prosecute.

B. Dismissal under Rule 37(b) For Failure to Comply with Discovery Orders

"A district court may impose sanctions when 'a party ... fails to obey an order to provide or permit discovery.' ' *Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 594, 598 (W.D.N.Y.**1996**) (quoting FED. R. CIV. P. 37(b)). Rule 37 of the Federal Rules of Civil Procedure, which concerns the discovery obligations of civil litigants, vests district courts with "broad power" and discretion to impose sanctions, including dismissal, on parties who fail to adhere to discovery orders. *See Friends of Animals, Inc. v. United States Surgical Corp.,* 131 F.3d 332, 334 (2d Cir.1997) (per curiam); *see also Jones v. J.C. Penney's Dep't Stores, Inc.,* 228 F.R.D. 190, 195 (W.D.N.Y.**2005**) (identifying dismissal of the action as an available sanction under Rule 37); *JSC Foreign Econ.*

*Ass'n. Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* No. 03 Civ. 5562, **2005** WL 1958361, at *9 (S.D.N.Y. Aug. 16, **2005**).

*6 While Rule 37 dismissal is a drastic remedy to be reserved only for extreme circumstances, it "is warranted ... where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (and cases cited therein); *see also Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over information requested and fails or refuses production without showing of inability to comply with court's order). Moreover, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam).

For all of the reasons discussed above, this Court finds that dismissal of this case is also proper under Rule 37(b) for Plaintiff's failure to comply with discovery orders.

IV. CONCLUSION

Mindful of the fact that *pro se* cases should not easily be dismissed for procedural deficiencies, this Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies, and constitute actual neglect. Plaintiff has failed to diligently prosecute this action in any manner, and has failed to comply with orders of this Court. As such, because each of the factors relevant to the Rule 41(b) and Rule 37(b) analysis favor dismissal, this Court will dismiss this case with prejudice.

V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Third Motion to Dismiss (Docket No. 145) is GRANTED.

FURTHER, that this case is dismissed with prejudice pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2205816

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Dansby v. Albany County Correctional Facility Staff, Not Reported in F.Supp. (1996)

Case 9:18-cv-01161-GTS-TWD Document 46 Filed 09/09/19 Page 18 of 25

1996 WL 172699
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DANSBY, Plaintiff,
v.
ALBANY COUNTY CORRECTIONAL
FACILITY STAFF, Defendant.

No. 95-CV-1525 (RSP/RWS).
|
April 10, **1996**.

**Attorneys and Law Firms**

Kevin Dansby pro se.

*ORDER*

POOLER, District Judge.

**\*1** In an order and report-recommendation dated December 8, 1995, Magistrate Judge Smith noted that Dansby had not signed the complaint he filed to commence this action. Magistrate Judge Smith directed Dansby to submit an affidavit which contained all of the representations delineated in Fed.R.Civ.P. 11(b) with respect to his complaint. The magistrate judge recommended dismissal of Dansby's action if Dansby failed to comply with the terms of the report-recommendation within forty-five (45) days from the date of the service.

On December 12, 1995, a copy of the report-recommendation was served on Dansby by regular mail to his last known address, the Albany County Jail. On December 22, 1995, the jail returned the report-recommendation marked "Return to Sender -- No Forwarding Order on File."

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1962). The district court may exercise its discretion to dismiss when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* 1994 **W.L.** 9688, at \*1 (S.D.N.Y. 1994).

Moreover, a plaintiff has the duty to inform the Court of any address changes. As the Fifth Circuit has stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Perkins v. King,* No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985) (citing *Williams v. New Orleans Public Service, Inc.,* 728 F.2d 730 (5th Cir. 1984); *Wilson v. Atwood Group,* 725 F.2d 255 (5th Cir. 1984) (en banc)); *see Wehlen v. Foti et al.,* 1987 **W.L.** 8039, at \*1-2 (E.D.La. 1987); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without Dansby filing the affidavit described above or notifying the court of his current address. Therefore, it is hereby

ORDERED, that this action is dismissed. *See* Rules 5.4(b)(4) and 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail at his last known address.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 172699

**Dansby v. Albany County Correctional Facility Staff, Not Reported in F.Supp. (1996)**

Case 9:18-cv-01161-GTS-TWD   Document 46   Filed 09/09/19   Page 19 of 25

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.



KeyCite Yellow Flag - Negative Treatment

Superseded by Statute as Stated in Fuller v. I.N.S., D.Conn., November 15, 2000

984 F.2d 85
United States Court of Appeals,
Second Circuit.

Orlando ROLDAN, Petitioner–Appellant,

v.

James RACETTE, Superintendent, Adirondack
Correctional Facility, and U.S. Immigration &
Naturalization Service, Respondents–Appellees.

No. 1684, Docket 91–2544.
|
Argued June 11, 1992.
|
Decided Jan. 22, 1993.

**Synopsis**

Alien petitioned for writ of habeas corpus. The United States District Court for the Northern District of New York, Howard G. Munson, J., dismissed petition, and appeal was taken. The Court of Appeals, Mahoney, Circuit Judge, held that habeas corpus petition challenging procedures used at deportation hearing was properly dismissed for lack of subject matter jurisdiction where petitioner had been deported to Colombia after his release from state custody while his appeal from denial of habeas petition was pending.

Dismissed.

West Headnotes (5)

**[1]** **Habeas Corpus**
 Aliens

Alien could not challenge in context of habeas corpus petition his custody in state prison by seeking relief against Immigration and Naturalization Service (INS) for INS' alleged failure to advise him at earlier deportation proceeding that illegal reentry would constitute violation of state parole. 28 U.S.C.A. §§ 2241(c)(3), 2254, 2254(a).

11 Cases that cite this headnote

**[2]** **Habeas Corpus**
Aliens

Filing of Immigration and Naturalization Service (INS) detainer does not place alien within INS custody, with result that alien does not satisfy "in custody" predicate for habeas relief against INS. 28 U.S.C.A. §§ 2241(c)(3), 2254, 2254(a).

17 Cases that cite this headnote

**[3]** **Habeas Corpus**
Aliens

Immigration and Naturalization Service (INS) "detainer" constitutes notice that future INS custody will be sought at conclusion of prisoner's pending confinement by another jurisdiction and request for prior notice regarding termination of that confinement so that detainer does not result from present confinement by INS for habeas corpus petition purposes.

42 Cases that cite this headnote

**[4]** **United States Magistrate Judges**
Waiver of right to review in general

Failure to object in timely fashion to magistrate's report operates as waiver of any judicial review of magistrate's decision, although rule applies to pro se litigants only if document explicitly states that failure to object to report within ten days will preclude appellate review. Fed.Rules Civ.Proc.Rules 6(a, e), 72, 28 U.S.C.A.; 28 U.S.C.A. § 636(b)(1).

4621 Cases that cite this headnote

**[5]** **Habeas Corpus**
Aliens

Habeas corpus petition challenging procedures employed by Immigration and Naturalization Service (INS) at deportation hearing was properly dismissed for lack of subject matter jurisdiction where petitioner had been deported to Colombia after his release from state custody while his appeal from denial of habeas petition

24 Fed.R.Serv.3d 841

was pending; deportation barred court from reviewing deportation order. Immigration and Nationality Act, §§ 106, 106(c), as amended, 8 U.S.C.A. §§ 1105a, 1105a(c).

24 Cases that cite this headnote

**Attorneys and Law Firms**

**\*85** Randolph Z. Volkell, North Merrick, NY, for petitioner-appellant.

William C. Pericak, Asst. U.S. Atty. for the N.D. of N.Y., Albany, NY (Gary L. Sharpe, U.S. Atty. for the N.D. of N.Y., Albany, NY, of counsel), for respondent-appellee U.S. I.N.S.

Robert Abrams, Atty. Gen. of the State of N.Y. John McConnell, Asst. Atty. Gen. of the State of NY, Albany, NY, for respondent-appellee James Racette, Superintendent, Adirondack Correctional Facility.

Before: CARDAMONE, WINTER, and MAHONEY, Circuit Judges.

**Opinion**

**\*86** MAHONEY, Circuit Judge:

Petitioner-appellant Orlando Roldan appeals from a judgment entered October 29, 1991 in the United States District Court for the Northern District of New York, Howard G. Munson, *Judge,* that dismissed Roldan's application for a writ of habeas corpus. The district court, adopting a report-recommendation of Ralph W. Smith, Jr., *Magistrate Judge,* entered September 10, 1991, ruled that Roldan was not "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) (1988), thus precluding habeas corpus jurisdiction.

We dismiss the appeal for lack of subject matter jurisdiction.

Background

Roldan, a native and citizen of Colombia, entered the United States in 1981 without inspection by any representative of the United States Immigration and Naturalization Service ("INS"). His petition asserts that on September 4, 1987, he was convicted in the Dutchess County Court in the State of New York of assault in the first degree and sentenced to an indeterminate prison term of two to six years.[1] In August 1988, Roldan was released from state prison on parole and placed in the custody of the INS.

Following a deportation hearing, Roldan was deported from the United States to Colombia on August 12, 1988. According to Roldan, the INS failed to notify him at that hearing of his legal rights, including the possibility of defending against the deportation based upon his 1983 marriage to an American citizen, or of the fact that subsequent reentry into the United States would constitute a violation of his parole.

In October 1989, Roldan reentered the United States without inspection. He was subsequently arrested for driving while intoxicated ("DWI"). The DWI offense and reentry into the United States were considered violations of his parole. Accordingly, Roldan's parole was revoked and he was recommitted to state prison to serve an additional twenty-four months of his state prison sentence.

On June 20, 1990, while Roldan was incarcerated, the INS began a proceeding to deport him by issuance of an order to show cause and warrant of arrest. The grounds for the proposed deportation were his reentry into the United States without inspection and his 1987 state conviction. In support of that proceeding, the INS lodged a detainer against Roldan with the state prison officials so that Roldan could be released into INS custody at the expiration of his state sentence.

On March 22, 1991, Roldan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). The named respondents were the INS and James Racette, superintendent of the Adirondack Correctional Facility, where Roldan was then imprisoned. The petition did not challenge the underlying state conviction, but rather "the miscarriage of justice and the violation of [Roldan's] rights which occurred at the 1988 INS proceedings against [him]."

The matter was referred to Magistrate Judge Smith. Thereafter, respondents moved to dismiss the petition for lack of subject matter jurisdiction. The INS contended that although Roldan was challenging the procedures employed in his earlier deportation hearing, he was not in the custody of the INS because the mere filing of a detainer did not satisfy the custody requirement for habeas corpus jurisdiction. The state respondent argued that because Roldan was in custody pursuant to a determination that he violated his parole and did not challenge either that determination or the underlying state conviction, there was no claim that his imprisonment met the

requirements of federal law for the provision of habeas relief to a state prisoner.

Addressing these motions, the magistrate judge entered a report-recommendation on September 10, 1991 that proposed dismissal of the petition for failure to satisfy **\*87** the "in custody" requirement of 28 U.S.C. § 2241(c)(3). The magistrate found that Roldan's incarceration in state prison was not determined by the allegedly defective 1988 deportation hearing, and that the INS detainer did not "place [Roldan] within INS custody for purposes of this action."

The report-recommendation was served upon the parties by certified mail. It included the following notice:

> Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to lodge written objections to the foregoing report.... FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Roldan acknowledged his receipt of the magistrate's report on September 9, 1991. No objections were filed. On October 29, 1991, Judge Munson entered an order that approved the report-recommendation and dismissed Roldan's petition. A corresponding judgment was entered on that date. Roldan filed a notice of appeal on November 12, 1991, and the district court issued a certificate of probable cause on December 9, 1991.

In December 1991, Roldan was released from state custody and was taken into custody by the INS. In January 1992, Roldan was deported to Colombia. The INS subsequently filed a motion, joined by Racette, which sought dismissal of the appeal pursuant to *Small v. Secretary of Health & Human Services,* 892 F.2d 15 (2d Cir.1989) (per curiam), for Roldan's failure to object to the report-recommendation of the magistrate judge.

Discussion

Roldan's habeas petition named as respondents both the superintendent of the New York correctional facility where he was incarcerated and the INS, which had lodged a detainer regarding Roldan with the state prison authorities prior to Roldan's application for habeas relief. We accordingly address Roldan's challenges to (1) his state custody, and (2) the INS detainer.

A. *Roldan's State Custody.*

**[1]** The magistrate judge's report-recommendation regarded Roldan as effectively seeking relief only "against the INS even though he is not in INS custody." The magistrate judge was certainly justified in that view.

Roldan's petition "challenge[d] proceedings of the INS, Buffalo office, with respect to a deportation hearing," and further contended that his state confinement was "illegal in that it was predicated upon the miscarriage of justice and the violation of my rights that occurred at the 1988 INS proceedings against me." There was no claim that there was any infirmity in the state proceedings that led to Roldan's initial conviction for assault.

Further, we cannot conclude that his subsequent imprisonment as a parole violator by New York State constituted "custody in violation of the Constitution or laws or treaties of the United States" within the meaning of 28 U.S.C. §§ 2241(c)(3) and 2254(a) simply because the INS allegedly failed to advise him at his 1988 deportation proceeding that illegal reentry would constitute a violation of his state parole. In any event, Roldan could hardly contend that his DWI conviction, an additional basis for his parole revocation, was attributable to the 1988 deportation proceeding.

We conclude that Roldan presented no significant challenge to his state custody. Considerations of mootness regarding this issue accordingly need not be addressed.

B. *The INS Detainer.*

**[2]** Construing Roldan's *pro se* habeas petition liberally, *see Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983), it is possible to read it as challenging the INS detainer. The magistrate judge took this view of Roldan's petition, but concluded that the filing of the INS detainer did not place Roldan within INS custody, with the **\*88** result that Roldan

did not satisfy the "in custody" predicate of §§ 2241(c)(3) and 2254 for habeas relief against the INS. In so ruling, the magistrate judge relied upon *Orozco v. INS,* 911 F.2d 539, 541 (11th Cir.1990) (per curiam), and *Campillo v. Sullivan,* 853 F.2d 593, 595 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989).

**[3]** These cases express the clear majority view that an INS detainer constitutes (1) a notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and (2) a request for prior notice regarding the termination of that confinement, and thus does not result in present confinement by the INS. *See Orozco,* 911 F.2d at 540–41 (following *Campillo* ); *Campillo,* 853 F.2d at 595 (INS detainer "merely notifies prison officials that a decision regarding [a prisoner's] deportation will be made by the INS at some future date"); *see also Prieto v. Gluch,* 913 F.2d 1159, 1162–64 (6th Cir.1990) (following *Campillo* ), *cert. denied,* 498 U.S. 1092, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); *Lepez–Mejia v. INS,* 798 F.Supp. 625, 627 (C.D.Cal.1992) (detainer "merely *notifies* the prison that the INS has some interest in a particular inmate, and asks prison officials to advise the INS when the inmate is about to be released"); *Severino v. Thornburgh,* 778 F.Supp. 5, 6 (S.D.N.Y.1991) ( "mere filing of an INS detainer notice fails to establish the requisite custody under the habeas corpus statute"); *Paulino v. Connery,* 766 F.Supp. 209, 210–11 (S.D.N.Y.1991) (INS detainer did not result in INS custody); *Soler v. INS,* 749 F.Supp. 1011, 1012 (D.Ariz.1990) (same); *Garcia v. INS,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (same); *Cabezas v. Scott,* 717 F.Supp. 696, 697 (D.Ariz.1989) (same); *D'Ambrosio v. INS,* 710 F.Supp. 269, 270 (N.D.Cal.1989) (same); *Fernandez–Collado v. INS,* 644 F.Supp. 741, 743–44 (D.Conn.1986) (same), *aff'd mem.,* 857 F.2d 1461 (2d Cir.1987).

Two older cases, however, state that the filing of an INS detainer results in "technical custody" of the affected prisoner by the INS. *See Chung Young Chew v. Boyd,* 309 F.2d 857, 865 (9th Cir.1962) ("Where ... a warrant is obtained by the [INS] while the person named is in a penal institution, and on the basis thereof a detainer is lodged with that institution, the [INS] gains immediate technical custody. This is retained until the individual is released from the institution at which time actual custody is obtained."); *Slavik v. Miller,* 89 F.Supp. 575, 576 (W.D.Pa.) ("The petitioner unquestionably is in the technical custody of the immigration authorities since a detainer has been lodged for the body of the petitioner at the time that the fulfillment of the state sentence has expired."),

*aff'd on another ground,* 184 F.2d 575 (3d Cir.1950) (per curiam), *cert. denied,* 340 U.S. 955, 71 S.Ct. 566, 95 L.Ed. 688 (1951); *cf. Campillo,* 853 F.2d at 596 (distinguishing *Boyd* and *Slavik* on the basis that in those cases, the "courts acted to ensure that an already existing deportation order would be subject to judicial review"). *But see Mohammed v. Sullivan,* 866 F.2d 258, 260 (8th Cir.1989) ("the filing of an INS detainer with prison officials does not constitute the requisite 'technical custody' for purposes of habeas jurisdiction"); *Fernandez–Collado,* 644 F.Supp. at 743 (court "not persuaded" by rationale of *Boyd* and *Slavik* ).

In *Vargas v. Swan,* 854 F.2d 1028 (7th Cir.1988), the Seventh Circuit remanded for a determination whether an INS detainer would be treated as a simple notice of INS interest in a prisoner, or as a request "to hold an inmate at the end of his sentence until the INS can take him into custody," *id.* at 1033, in which event INS custody would be established. In *Prieto,* however, the Sixth Circuit rejected the *Vargas* rationale, concluding that an INS detainer notice "does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose." *Prieto,* 913 F.2d at 1164. In *Guti v. INS,* 908 F.2d 495, 496 (9th Cir.1990), the Ninth Circuit ruled, citing *Vargas,* that an assertion of INS custody resulting from an INS detainer was not a frivolous contention within the meaning of 28 U.S.C. § 1915(d) (1988). *See also Payo v. Hayes,* 754 F.Supp. 164, 166 (N.D.Cal.1991) (same).

**\*89** The record on appeal in this case does not include the INS detainer regarding Roldan that was filed with the New York authorities. We are not faced, however, with a choice between affirming on the basis that INS detainers serve only a notice function, following the majority view, or remanding, in accord with *Vargas,* for a particularized determination whether the detainer in this case constituted a request that Roldan be held for the benefit of the INS at the conclusion of his state prison term. Events occurring subsequent to the magistrate judge's report-recommendation preclude our consideration of this issue.

**[4]** In the first place, the rule in this circuit is that "failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Small,* 892 F.2d at 16 (collecting cases). In *Small,* we clarified the application of this rule to *pro se* litigants, holding that their failure to object to a magistrate's report and recommendation would operate as a waiver of appellate review only if the document "explicitly states that failure to object to the report

within ten (10) days will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure." *Small,* 892 F.2d at 16; *see also Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (*pro se* litigant barred from review of magistrate's proposed ruling despite immaterial variation from notice language required by *Small* ), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992). The report-recommendation provided to Roldan plainly satisfies the *Small* requirements, and additionally referred to the *Small* decision. Notwithstanding this notification, Roldan filed no objections.

On this record, accordingly, we would have a clear basis for affirmance without considering Roldan's contention that the INS detainer resulted in habeas corpus "custody." Further, although the *Small* rule is a nonjurisdictional waiver provision whose violation we may excuse in the interests of justice, *see Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); *Frank,* 968 F.2d at 300, we perceive no basis in this record for such a departure.

 [5]  This appeal, furthermore, encounters an even more fundamental difficulty. 8 U.S.C. § 1105a(c) (1988) provides in pertinent part that: "An order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." The INS contends, in its brief on appeal, that "[o]nce Roldan was deported in 1988, 8 U.S.C. § 1105a(c) operated to divest the courts of jurisdiction to entertain any challenge to the deportation order." It seems to us that the deportation order presently under review is the one that resulted in Roldan's 1992 deportation, with the result that his 1992, rather than 1988, deportation is the proper basis for the invocation of § 1105a(c) on this appeal.

Notwithstanding the unambiguous language of the statute, there is some conflict among the circuits as to the meaning of the provision of § 1105a(c) at issue in this case. The seminal case is *Mendez v. INS,* 563 F.2d 956 (9th Cir.1977), in which the Ninth Circuit expressed "the opinion that 'departure' in the context of 8 U.S.C. § 1105a cannot mean 'departure in contravention of procedural due process.' We hold that 'departure' means 'legally executed' departure when effected by the government." *Mendez,* 563 F.2d at 958 (citing *Delgadillo v. Carmichael,* 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17 (1947)). The INS was ordered to admit Mendez into the United States with the same status he had prior to deportation because its failure to notify Mendez' counsel

prior to Mendez' deportation violated a pertinent statute and regulation. *Id.* at 959.

Subsequent Ninth Circuit rulings have followed *Mendez. See, e.g., Zepeda–Melendez v. INS,* 741 F.2d 285, 289 (9th Cir.1984) (basing jurisdiction upon failure of INS to notify alien's counsel of deportation); *Thorsteinsson v. INS,* 724 F.2d 1365, 1367 (9th Cir.) (examining record of deportation hearing upon claim of ineffective assistance of counsel), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984);  *90 *Estrada–Rosales v. INS,* 645 F.2d 819, 820– 21 (9th Cir.1981) (allowing attack upon deportation order based on conviction set aside after alien's deportation). In addition, the Sixth Circuit endorsed *Mendez* in *Juarez v. INS,* 732 F.2d 58, 59–60 (6th Cir.1984), and the Third Circuit cited *Mendez* favorably in *Newton v. INS,* 622 F.2d 1193, 1195 (3d Cir.1980), although concluding that the *Mendez* claim was not supported by the record in that case. *Id.*

Other circuits, however, have responded less hospitably to the *Mendez* gloss on § 1105a(c). In *Umanzor v. Lambert,* 782 F.2d 1299 (5th Cir.1986), the Fifth Circuit expressed "serious reservations" about *Mendez, id.* at 1303, describing it as "a sinkhole that has swallowed the rule of § 1105a(c)" in the Ninth Circuit, 782 F.2d at 1303 n. 5, but concluded that there was no basis in the *Umanzor* record for the application of the *Mendez* rule in any event. *Id.* at 1303. This criticism was reiterated in *Ortez v. Chandler,* 845 F.2d 573, 575 (5th Cir.1988), another case in which *Mendez* considerations were not dispositive. The Fifth Circuit squarely rejected *Mendez* in *Quezada v. INS,* 898 F.2d 474, 476 (5th Cir.1990) (citing *Asai v. Castillo,* 593 F.2d 1222 (D.C.Cir.1978) (per curiam)), and declined to exercise jurisdiction in reliance upon § 1105a(c). *Id.* at 477.

*Asai* granted an unopposed motion to dismiss an appeal by deported aliens, citing § 1105a(c). 593 F.2d at 1224 & n. 1. More recently, the District of Columbia Circuit "venture[d] no opinion upon the validity of [the *Mendez* ] exception," *Joehar v. INS,* 957 F.2d 887, 890 (D.C.Cir.1992), which was inapplicable to the voluntary departure in that case, but indicated an attitude of hostility to it, including quotation of the *Umanzor* "sinkhole" appraisal. *Joehar,* 957 F.2d at 889 (quoting *Umanzor,* 782 F.2d at 1303 n. 5). The Tenth Circuit has ruled that the command of § 1105a(c) is "unequivocal" and that a petitioner's deportation "eliminates our jurisdiction to review his deportation order," *Saadi v. INS,* 912 F.2d 428, 428 (10th Cir.1990) (per curiam) (citing *Quezada,* 898 F.2d at 476–77; *Umanzor,* 782 F.2d at 1303; *Asai,* 593 F.2d at 1223–

24), but without mentioning *Mendez.* The Seventh Circuit "express[ed] no opinion" on the Ninth Circuit rule in *Terrado v. Moyer,* 820 F.2d 920, 922 (7th Cir.1987), a case in which there was no factual basis for application of the *Mendez* exception. *Id.*

We agree with the courts that have criticized *Mendez.* The pertinent language of § 1105a(c) constitutes a clear jurisdictional bar, and admits of no exceptions. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there") (collecting cases).

The critical flaw in the *Mendez* rule is especially evident in *Thorsteinsson.* That case characterized the jurisdictional bar of § 1105a(c) as a "general rule," 724 F.2d at 1367, and allowed an allegation of ineffective assistance of counsel to open the door to at least a partial review of the petitioner's deportation hearing. *Id.* Although the petitioner's claim was ultimately found to be without merit, *id.,* the decision nonetheless establishes that an alien need only allege a defective deportation hearing to obtain review of that hearing. To allow the clear intent of Congress expressed in § 1105a(c)—that "[a]n order of deportation ... shall not be reviewed" once the alien has departed—to be so easily circumvented is to render the statute virtually without effect, clearly validating *Umanzor'* s "sinkhole" assessment. *Umanzor,* 782 F.2d at 1303 n. 5; *see also Marsano v. Laird,* 412 F.2d 65, 70 (2d Cir.1969) ("an interpretation which emasculates a provision of a statute is not to be preferred").

We also agree with *Umanzor* that Congress had ample constitutional authority to enact the jurisdictional limitation at issue in this case. *See Umanzor,* 782 F.2d at 1304 ("Congress is constitutionally empowered to curtail the habeas jurisdiction of the lower federal courts if it so chooses"). As the Supreme Court recently reiterated:

Article I, § 8, cl. 9 ... authorizes Congress "[t]o constitute Tribunals inferior to the supreme Court" and Article III, § 1,

states that "[t]he judicial Power of **\*91** the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." The Court's cases state the rule that "if inferior federal courts were created, [Congress was not] required to invest them with all the jurisdiction it was authorized to bestow under Art. III." *Palmore v. United States,* 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973).

This position has held constant since at least 1845, when the Court stated that "the judicial power of the United States ... is (except in enumerated instances, applicable exclusively to this court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) ... and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good." *Cary v. Curtis,* [44 U.S.] 3 How. 236, 245, 11 L.Ed. 576. See *Sheldon v. Sill,* [49 U.S.] 8 How. 441, 12 L.Ed. 1147 (1850); *Plaquemines Tropical Fruit Co. v. Henderson,* 170 U.S. 511, 18 S.Ct. 685, 42 L.Ed. 1126 (1898); *Kline v. Burke Constr. Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943).

*Ankenbrandt v. Richards,* 504 U.S. 689, ——, 112 S.Ct. 2206, 2212, 119 L.Ed.2d 468 (1992).

Conclusion

The appeal is dismissed for want of subject matter jurisdiction.

**All Citations**

984 F.2d 85, 24 Fed.R.Serv.3d 841

Footnotes

1   While Roldan and the State of New York assert that Roldan was convicted of assault, the INS claims that Roldan was convicted of a drug offense. The exact nature of the offense is not material to the issues presented by this appeal.

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.