UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RIGER MAYANDUENAS, formerly known
as Riger Mayandeunas, formerly known
as Mayan Duenas Riger,

9:18-CV-1161

AMN/TWD

Plaintiff,

-against-

BIGELOW, Correction Officer, formerly
known as Officer Bigelow, et al.,

Defendants.

_____

**DEFENDANTS' TRIAL BRIEF**

LETITIA JAMES
Attorney General
State of New York
*Attorneys for Defendants*
The Capitol
Albany, New York 12224

By: *s/ Kostas D. Leris*
Kostas D. Leris
Assistant Attorney General, of counsel
Bar Roll No. 519646
Tel.: (518) 776-2574
Kostas.Leris@ag.ny.gov

By: *s/ Amanda K. Kuryluk*
Amanda K. Kuryluk
Assistant Attorney General, of counsel
Bar Roll No. 516864
Tel.: (518) 776-2621
Amanda.Kuryluk@ag.ny.gov

## Table of Contents

**PRELIMINARY STATEMENT** ................................................................................................... 1

**STATEMENT OF FACTS** ......................................................................................................... 1

**ARGUMENT** ............................................................................................................................ 4

    **POINT I** .............................................................................................................................. 4

    **PLAINTIFF WILL BE UNABLE TO ESTABLISH THAT HE WAS SUBJECTED TO EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT** ................... 4

    **POINT II** ............................................................................................................................. 6

    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY** ................................. 6

**CONCLUSION** ......................................................................................................................... 7

## PRELIMINARY STATEMENT

At all relevant times, Plaintiff Riger Mayanduenas ("Plaintiff"), was incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") in the Annex Building of Clinton Correctional Facility ("Clinton").  Plaintiff alleges that Defendants Shane Bigelow ("Bigelow"), Jason Burdo ("Burdo"), Ronald Fuller ("Fuller"), and Kenneth Maurer ("Maurer") violated his rights guaranteed by the Eighth Amendment of the United States Constitution by using excessive force against him on January 14, 2018.

The evidence will conclusively demonstrate that Plaintiff cannot sustain his burden in proving any of these claims.  Also, as set forth more fully hereinafter, Defendants should be granted qualified immunity if liability is found.

For all of these reasons, and those facts set forth during the course of this litigation, judgment should be entered in favor of Defendants and against Plaintiff.

## STATEMENT OF FACTS

Plaintiff was involved with a documented use of force on January 14, 2018.  The use of force occurred in the clinic area of Clinton's Annex Building at approximately 9:00 p.m., after Plaintiff received his mental health medications.  Nurse Harriman, a non-party, distributed Plaintiff's medications to him.  After Plaintiff took his medications, Nurse Harriman asked him to open his mouth to ensure that he swallowed them.  Plaintiff does not speak English and claims that he could not understand Nurse Harriman's instructions.  Nurse Harriman directed Plaintiff to sit on the bench in the clinic and wait for the other individuals to receive their medications, so he could use the language line to have someone communicate with Plaintiff in Spanish.

While Plaintiff was seated on the bench, another incarcerated individual, who spoke both Spanish and English, approached the medication window to receive his medications.  Nurse

Harriman asked this individual to tell Plaintiff to open his mouth and confirm that he swallowed his medications so he could leave the clinic.  This individual relayed the information to Plaintiff, which caused Plaintiff to become angry.   Plaintiff stood up and aggressively charged at the medication window, where Nurse Harriman was standing.  Nurse Harriman directed Plaintiff back to his seat.  Plaintiff initially complied, but then charged at the medication window two more times.

Defendants Bigelow, Burdo, and Fuller were in the clinic area when this occurred. Defendant Burdo gave Plaintiff a direct order to sit on the bench.  Plaintiff did not comply. Defendant Bigelow then directed Plaintiff to stand against the wall.  At that point, Plaintiff took off his glasses and stated, "Fight Me!" numerous times to Defendant Bigelow while approaching Defendants Bigelow and Burdo with his hands raised in a fighting position.  Defendant Bigelow used one application of OC spray to Plaintiff's face to gain control of the situation and prevent Plaintiff from assaulting him.  The OC Spray did not have the desired effect and Plaintiff continued approaching Defendants Bigelow and Burdo with his arms raised.

Defendant Bigelow then grabbed Plaintiff by his left wrist and shoulder and brought him face first to the ground.  Defendant Burdo also fell to the ground.  Plaintiff continued to struggle violently while on the ground as Defendants Burdo and Bigelow were attempting to restrain him. Defendant Fuller, who was nearby but not involved in the initial use of force, called a Level 2 emergency response, and then went to assist Defendants Bigelow and Burdo.  Defendant Maurer was the first officer to respond and observed Plaintiff violently struggling while on the ground. Defendant Maurer used one application of OC Spray on Plaintiff to help gain control of the situation.  The OC Spray got in Defendant Maurer's eyes, temporarily blinding him and causing him to remove himself from the use of force.  Defendant Maurer did not use any additional force on Plaintiff.

Eventually, Defendants Bigelow, Burdo, and Fuller were able to control Plaintiff's arms and place him in mechanical restraints, and all force ended at that time.  Defendants did not strike Plaintiff at any time during the documented use of force.  Plaintiff was then escorted to the facility infirmary at the direction of Sgt. Dixon, who was the area sergeant that responded to the Level 2 emergency.   The escort was videotaped and completed without incident.   Plaintiff was decontaminated and then initially treated at the infirmary.  Plaintiff was ultimately sent to an outside hospital for treatment, where he was diagnosed with a fractured left orbital.

Defendant Bigelow issued Plaintiff an Incarcerated Misbehavior Report[1] ("IMR") charging Plaintiff with the following violations: Rule 106.10, Direct Order; Rule 104.13 Disturbance; Rule 100.11 Attempted Staff Assault; and Rule 107.10 Interference.   Plaintiff was afforded a Superintendent's Hearing to determine whether he was guilty of the charges in the IMR.  The hearing commenced on January 24, 2018, and concluded on February 1, 2018.  Plaintiff was found guilty of all charges in the IMR and received the following penalties: 120 days in the Special Housing Unit; 120 days loss of recreation, packages, commissary, and phones; and 3 months loss of good time.

All force used by Defendants Bigelow, Burdo, Fuller, and Maurer was reasonable and necessary to ensure Defendants' safety and gain control of Plaintiff.  Defendants Bigelow, Burdo, Fuller, and Maurer did not subject Plaintiff to excessive force.  Although Plaintiff sustained injuries on January 14, 2018, the injuries were the result of Plaintiff's face striking a concrete floor during the course of a lawful use of force by Defendants.

---

[1] Formerly referred to as Inmate Misbehavior Report.

## ARGUMENT

## POINT I

## PLAINTIFF WILL BE UNABLE TO ESTABLISH THAT HE WAS SUBJECTED TO EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments."  U.S. Const. Amend. VIII.  In the context of prisons, only serious deprivations of basic human needs or the unnecessary infliction of pain without penological justification can constitute cruel and unusual punishments.  *Hudson v. McMillian*, 503 U.S. 1 (1992); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  Indeed, as the United States Supreme Court has stated: "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6; *see Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (Eighth Amendment inquiry examines defendant's motive for alleged conduct; and the conduct's alleged effect or level of harm done).

An incarcerated individual's Eighth Amendment protection against excessive force by correction officers "is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Anderson v. Sullivan*, 702 F. Supp. 424 (S.D.N.Y. 1988).  Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Whitley v. Albers*, 475 U.S. 312 (1986); *see Bodie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

In fact, "to find that excessive force was used in violation of the Eighth Amendment, a plaintiff must prove by the preponderance of the evidence, that force was used against the plaintiff, and that such force was used maliciously and sadistically to cause harm, and not in a good-faith

4

effort to maintain or restore discipline." *Henry v. Dinelle*, 929 F. Supp. 2d 107, 116 (N.D.N.Y. 2013). "Some of the things a jury may consider in determining whether force was used against the plaintiff maliciously and sadistically to cause him harm (and not in a good-faith effort to maintain or restore discipline) include the following: (1) the need for the use of force; (2) the relationship between the need for force and the amount of force used; (3) the threat reasonably perceived by responsible corrections officers; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the plaintiff." *Id*. at 116-17.

"Corrections officers are given the lawful authority to use such physical force as may be reasonably necessary to enforce compliance with proper instructions and to protect themselves from physical harm from an inmate." *Id*. at 117 (citing *Hudson*, 503 U.S. at 9). Additionally, an inmate's provocation of a correction officer is an important factor to be considered in determining whether the use of force violated the Eighth Amendment. *Miller v. Leathers*, 913 F.2d 1085 (4th Cir. 1990); *Santiago v. Yarde*, 487 F. Supp. 52, 54 (S.D.N.Y. 1980) (officer's lawful attempts to maintain order resulted in bruises on plaintiff's arms and legs); *Argentine v. McGinnis*, 311 F. Supp. 134, 138 (S.D.N.Y. 1969) ("prison authorities may use reasonable force on prisoners when administering prison regulations").

Here, Plaintiff claims that Defendants assaulted him by using pepper spray on him, and then punching and kicking him for no apparent reason. These claims are a fabrication and will be belied by the evidence at trial. The overwhelming testimonial and documentary evidence at trial will instead establish that Defendants engaged in a lawful use of force against Plaintiff after Plaintiff aggressively approached Defendants trying to fight them. Defendants used the least amount of force necessary to prevent Plaintiff from assaulting them, and any injuries Plaintiff sustained were consistent with his face hitting the concrete floor during the lawful use of force.

5

## POINT II

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants are, in any event, shielded from liability by the doctrine of qualified immunity. The doctrine of qualified immunity shields officers from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9, 11 (2021) (citations omitted); *Matzell v. Annucci*, 64 F.4th 425, 433-34 (2d Cir. 2023) (citations omitted). Qualified immunity allows government officials to make reasonable judgments and is said to protect "all but the plainly incompetent or those who knowingly violate the law." *Matzell*, 64 F.4th at 434 (citations omitted); *see also*, *City of Tahlequah*, 142 S. Ct. at 11 (citations omitted).

The qualified immunity defense requires a two-part analysis. *Matzell*, 64 F.4th at 434. First, Plaintiff must establish that the defendants' conduct violated a constitutional right. *Id*. Second, Plaintiff must establish that the constitutional right that was violated was clearly established at the time of the challenged conduct. *Id.* A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* To determine whether a law is clearly established, Courts consider "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Id.* The Supreme Court has emphasized that its case law does not "require a case directly on point" but that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Courts should not define clearly established law at too high of a level of generality. *See City of Tahlequah*, 142 S. Ct. at 11 (citations omitted). It is not enough that a rule be suggested

by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.*

The evidence at trial will establish that it was objectively reasonable for Defendants to use force on Plaintiff on January 14, 2018, and that the amount of force used was necessary under the circumstances. Thus, Defendants are, at the very least, entitled to qualified immunity.

## CONCLUSION

Upon the conclusion of Plaintiff's case, and at the conclusion of the trial, it is expected that Defendants will move for dismissal as a matter of law with regard to some or all of the claims against Defendants. For the reasons set forth herein, it is respectfully asserted that such dismissal is appropriate pursuant to Fed. R. Civ. P. 50.

Dated: Albany, New York
       September 8, 2023

<div style="margin-left:40%">

LETITIA JAMES
Attorney General
State of New York
*Attorneys for Defendants*
The Capitol
Albany, New York 12224

By: s/ Kostas D. Leris
Kostas D. Leris
Assistant Attorney General, of counsel
Bar Roll No. 519646
Tel.: (518) 776-2574
Kostas.Leris@ag.ny.gov

By: s/ Amanda K. Kuryluk
Amanda K. Kuryluk
Assistant Attorney General, of counsel
Bar Roll No. 516864
Tel.: (518) 776-2621
Amanda.Kuryluk@ag.ny.gov

</div>

TO:  All Attorneys of Record
      Via: CM/ECF